NOT FOR PUBLICATION (Doc. No. 138)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ALANDA FORREST | : |
| Plaintiff, | : Civil No. 09-1555 (RBK/JS) |
| v. | : **OPINION** |
| JON S. CORZINE, et. al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant City of Camden's ("the City") motion for summary judgment (Doc. No. 138) on Plaintiff Alanda Forrest's ("Plaintiff") claims as set forth in Plaintiff's Fourth Amended Complaint ("Complaint"). (Doc. No. 64.) For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted in part and denied in part.

I.   FACTUAL BACKGROUND[1]

This matter relates to criminal charges brought against five former officers of the Camden Police Department ("CPD"). (Def.'s SMF ¶¶ 1, 12.) Three of those officers, Officers Jason Stetser ("Stetser"), Kevin Parry ("Parry"), and Dan Morris ("Morris") pleaded guilty to

---

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the non-moving party. See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Here, Defendant's Statement of Material Facts ("Def.'s SMF") is largely undisputed by Plaintiff. (See Pl.'s Resp. to Def.'s Statement of Facts ("Pl.'s SMF") ¶¶ 1–80, Doc. No. 144 (disputing only those facts alleged in paragraphs 11, 29, 32, 57, 52, 68).) Therefore, the Court will rely on Defendant's Statement of Undisputed Material facts, Plaintiff's Supplemental Statement of Material Facts, and the exhibits contained in the Record.

conspiracy to deprive individuals of their civil rights.  (Id. ¶ 57.)  Stetser's and Parry's convictions stemmed from criminal conduct in which they engaged while serving on the CPD, including filing false reports; conducting illegal searches of properties; providing informants with drugs, money, and food in exchange for information; planting drugs on individuals to create criminal liability; and lying under oath in front of grand juries, suppression hearings, and trials.  (Id. ¶¶ 39, 41, 45.)  During their time with the CPD, Stetser and Parry were always partnered with one another.  Morris, Stetser and Parry's supervisor, knew of and encouraged their criminal behavior.  (Id. ¶¶ 33,51.)  As a result of the investigation into Stetser and Parry, 214 criminal cases had judgments vacated, charges dismissed, or pending indictments forfeited.  (Pl.'s SMF ¶ 124.)  Included among those 214 cases was Plaintiff's criminal drug conviction, the surrounding circumstances of which serve as the basis for the instant litigation.  Those circumstances, taken in the light most favorable to Plaintiff, are as follows.

On July 1, 2008, Plaintiff was working for a housing contractor at 1263 Morton St., a residence in Camden, New Jersey.  (Dep. of Alanda Forrest ("Forrest Dep."), Doc. 144, Ex. 64a 88:17–25.)  Shortly after finishing work around 9:30 p.m., he walked across the street to speak to some acquaintances, namely Shahid Green ("Green") and a woman named "Hot Dog," both of whom were hanging out and drinking on the porch of 1270 Morton Street.  (Id. 94:17–95:18.) Plaintiff, Green, and Hot Dog noticed a police car driving down the street and decided, given the time of night, to go inside.  (Id. 96:1–9.)  Sometime thereafter Plaintiff heard what he thought was a kick at the door.  (Id. 103:12–15.)  He went upstairs to talk to "Skeet," a resident of 1270 Morton St. who was in an upstairs bedroom, about the kick at the door. (Id. 103:32–104:4.)

Shortly thereafter, the bedroom door was kicked in.  Plaintiff remembers being hit in the face but does not remember who hit him. (Id. 108:1–9.)  He awoke to Parry holding him down

and hitting him in the face. (Id. 108:18–22.) Stetser was apparently standing nearby watching. (Id. 12–16.) Parry handcuffed Plaintiff and dragged him down the stairs.[2] (Id. 119: 11–19.) Plaintiff suffered a laceration to his ear, bruising to his face, and injuries to his knees.[3]

Plaintiff was then placed in the back of Morris's police vehicle. (Id. 122:23–123:5.) Parry allegedly told Plaintiff that whatever drugs were found in the house would be attributed to Plaintiff. (Id. 123:16–20.) Morris drove Plaintiff to a parking lot on Ferry Avenue and kept him there for approximately thirty minutes before Parry and Stetser arrived and drove him to the hospital for medical treatment. (Id.) Plaintiff received stitches for the laceration to his ear. According to Plaintiff, he reported to the nurses that his injuries were the result of a fall because Parry threatened to charge him with assault if he told the medical professionals the truth. (Id. ¶ 128.) After receiving treatment, Plaintiff was taken to the Camden County Correctional Facility. (Dep. of Alanda Forrest, Feb. 1, 2012 ("Forrest Dep.") Doc. 144, Ex. 64b at 144–47.)

Parry's major incident report written recounts the events leading to Plaintiff's arrest much differently. The report states that Plaintiff was arrested for possession and possession with intent to distribute after Parry and Stetser allegedly witnessed Plaintiff engaging in a hand-to-hand drug transaction on the porch of a residence located at 1270 Morton Street. (See Major Incident Report, Doc. 138, Ex. 24.) The report also states that Plaintiff initiated the physical altercation. Parry testified before a grand jury to this version of events and claimed that Plaintiff was in possession of 49 bags of a controlled dangerous substance. (Pl.'s SMF ¶ 133.) Parry has since conceded that he falsified the events as recorded in his report. (Def.'s SMF ¶ 64.) He and Stetser witnessed no hand-to-hand drug transaction but falsely recorded as much in order to

---

[2] Plaintiff cannot remember if Stetser assisted Parry in dragging him down the stairs.
[3] Plaintiff has offered the deposition of Lakesha Primus, a resident of 1270 Morton Street who was present when the events ensued. Her testimony largely supports Plaintiff's version of events. (Dep. of Lakesha Primus, Doc. 144, Exs. 44 & 44a, 44:20–54:20.)

3

create probable cause for Plaintiff's arrest.[4]  (Id. ¶ 65.)  Likewise, Plaintiff denies distributing drugs and resisting arrest.  (Pl.'s SMF ¶ 129.)

Plaintiff complained to Internal Affairs regarding the events surrounding his arrest.  Defendants attach a complaint filed by Plaintiff on July 21, 2008, shortly after Plaintiff's arrest.  The Complaint alleges that Officer Parry and "his partner" caused Plaintiff to sustain a laceration to his ear requiring stitches, bruises on his knees, and pain in his neck and back.  (Def.'s Br., Doc. 138, Ex. 33.)[5]

Despite these complaints, Plaintiff pleaded guilty to possession and served eighteen months in a New Jersey state prison.  (Forrest Dep. 165:17–23.)  Plaintiff contends that he entered into the plea bargain at the request of his wife.  (Forrest Dep. 159: 12–25.)  However, at his plea hearing, Plaintiff told the Court that he gave his plea freely and voluntarily and denied being coerced into entering his plea.  (Forrest Dep. 160–61.)

Plaintiff's Complaint asserts multiple claims against the City of Camden,[6] including claims for negligence (Count VI) and conspiracy (Count VIII), and a Monell claim pursuant to 42 U.S.C. § 1983 (Count VII).  Plaintiff's Monell claim alleges that the City of Camden was deliberately indifferent to the officers' "prior incidents of unjustified violations [and] aggressive behavior" and to "allegations of planting false evidence upon innocent victims."  (Compl. ¶ 39.)

---

[4] Parry testified in Bayard's and Figueroa's criminal proceedings that he falsified the reports.  (Def.'s SMF ¶ 64 (citing the transcript of Parry's testimony).)  However, in their depositions in preparation for the instant case, Stetser and Parry stated that neither remembers the particular events surrounding Plaintiff's arrest.  (Def.'s SMF ¶ 62.)

[5] Plaintiff also attaches a letter sent to the Internal Affairs Division on September 25, 2008 reiterating his allegations of excessive force and an October 21, 2008 letter to then-Governor Corzine alleging that Stetser and Parry had fabricated charges against him.  (Doc. 144, Ex. 43.)  However, the Court did not consider these documents in rendering its decision because Plaintiff did not produce them during discovery.  (See Decl. of Daniel Rybeck, Doc. No. 150, Ex. 8.)

[6] Plaintiff's Complaint names both the City of Camden and the City of Camden Department of Public Safety.  However, the proper Defendant is the City of Camden.  See Padilla v. Twp. of Cherry Hill, 110 Fed. App'x 272, 278 (3d Cir. 2004) ("[B]ecause the Police Department is merely an administrative arm of the local municipality, [it] is not a separate judicial entity.").

This deliberate indifference, Plaintiff avers, was a "substantial contributing factor" in the officers' use of force and filing of false charges against the Plaintiff. (Id. ¶ 38.) Defendant filed the instant motion for summary judgment, arguing primarily that Plaintiff has demonstrated no policy or custom of Camden as required by Monell. Because these issues have been briefed by the parties, the Court proceeds to a discussion of the merits.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' —that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to

survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. App'x. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. Municipal Liability under § 1983

Plaintiff suggests three theories of § 1983 liability.[7] First, Plaintiff appears to suggest that the City's Internal Affairs system was inadequate and provided no accountability for Stetser and Parry. (Pl.'s Br. 32, 34.) Second, Plaintiff alleges that the City's supervisory structure and inadequate monitoring system left Stetser and Parry unsupervised. (Id. ¶ 32.) Lastly, Plaintiff asserts that Stetser and Parry received inadequate training because training "about how to recognize and eradicate excessive force and misconduct" was necessary. (Id. 30–35.) The Court addresses each of Plaintiff's theories in turn.

It is axiomatic that a plaintiff may not hold a municipal entity liable under 42 U.S.C. § 1983 on a theory of respondeat superior. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436

---

[7] Because Plaintiff's brief cited little to no case law, the Court was largely left in the dark as to which recognized theories Plaintiff's case relies.

U.S. 658, 691 (1978). Rather, to establish a § 1983 municipal liability claim that will survive a motion for summary judgment, a plaintiff must offer evidence of a particular municipal policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that contributed to Plaintiff's injury. See id. at 694.

After identifying a policy or custom, a plaintiff then must establish causation by showing how the municipality's deliberate conduct under that custom was the "moving force" behind the injury alleged. See Bd. of Cnty. Comm'rs. of Bryan Cnty, Okla. v. Brown, 520 U.S. 397, 404 (1997). Where the policy "concerns a failure to train or supervise municipal employees," this burden involves demonstrating "that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cnty, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks and citation omitted). "[T]he deficiency in training [must have] actually caused the constitutional violation." Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989) (internal quotation marks omitted).

While the Supreme Court originally fashioned the "deliberate indifference" doctrine in the context of a city's alleged failure to properly train its police officers, the Third Circuit has since adopted this standard in other policy and custom situations. Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). In general, a municipality may be liable under § 1983 if it tolerates known illegal conduct by its employees. Id. In such circumstances, it can be said to have a custom that evidences deliberate indifference to the rights of its inhabitants if (1) policymakers were aware that municipal employees had deprived others of certain constitutional rights; (2) it failed to take precautions against future violations; and (3) this failure led, at least in part, to the plaintiff's suffering the same deprivation of rights. See id. (citing Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

### i. Failure to Supervise, Investigate, and Discipline

Plaintiff asserts, albeit in not as precise of terms, that the City of Camden's Internal Affairs Department had such an extensive backlog of complaints that many were improperly investigated or went uninvestigated altogether. (See Pl.'s Br. 32, 34.) The pivotal case in this circuit for Plaintiff's theory is Beck v. City of Pittsburgh, 89 F.3d 966 (1996). There, the Third Circuit recognized that a § 1983 claim for damages against a municipality could survive summary judgment where the plaintiff offered evidence suggesting that the municipality's chief law enforcement policymaker knew about and acquiesced in the use of excessive force by city police officers. 89 F.3d 966 (3d Cir. 1996). In Beck, the plaintiff offered multiple pieces of evidence in support of his claim, including a series of detailed excessive force complaints against the defendant police officer who had allegedly injured the plaintiff, none of which were sustained or resulted in disciplinary action. Beck, 89 F.3d at 969–70. The plaintiff also introduced testimony showing that the department treated each complaint against an officer as an independent event triggering no review of any previous unsustained complaints against the officer. Id. at 969. Lastly, the plaintiff offered an internal report acknowledging that the department had a problem with officers using excessive force. Id. at 970, 975. Accordingly, the Third Circuit panel reversed the trial court's grant of judgment as a matter of law in favor of the defendant municipality. Id. at 976.

Since the Beck decision, trial courts in this circuit have grappled with the issue of what type of evidence a plaintiff must adduce in support of a Monell municipal liability claim under § 1983 in order to survive summary judgment. For instance, statistical evidence alone, "isolated and without further context," generally may not justify a finding "that a municipal policy or

custom authorizes or condones the unconstitutional acts of police officers." Merman v. City of Camden, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) (citing Strauss v. City of Chi., 760 F.2d 765, 768–69 (7th Cir. 1985)). Instead, if a plaintiff wishes to rely principally on statistics, she must also show why those prior incidents were wrongly decided and "how the misconduct in those cases is similar to that involved in the present action." [8] See Franks v. Cape May Cnty., No. 07–6005, 2010 WL 3614193, at *12 (D.N.J. Sept. 8, 2010).

In this case, when viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has met his burden and demonstrated a genuine issue of material fact. Plaintiff has offered statistical reports and testimony from Lt. Sosinavage, the Internal Affairs Director from 2004 to 2008, that the department was suffering from a significant backlog of complaints in the years leading up to Plaintiff's arrest. Sosinavage testified that the department in those years was investigating and closing only a tiny fraction of its excessive force complaints.[9] Of those complaints investigated, an even smaller number were sustained. Indeed, from 2004 to 2008, the department sustained only one excessive force complaint. (Sosinavage Dep., Doc. No. 144, Ex. 48 132:6–133:9.) The backlog seems to have been a recurring issue with the CPD's internal affairs department. A 2002 Report from New Jersey's Division of Criminal Justice advised that "[t]he failure to immediately address the complaint backlog and,

---

[8] One way to do this could be to show that the officer whom a plaintiff accuses of using excessive force has been the subject of multiple similar complaints in the past. See Beck, 89 F.3d at 975; see also Garcia v. City of Newark, No. 08–1725, 2011 WL 689616, at *3–5 (D.N.J. Feb. 16, 2011) (showing that the six individual defendants together accounted for more than 55 complaints for excessive force and false arrest in the 11 years prior to the incidents at issue). Alternatively, when such evidence against the particular officer is not available, a trial court in this District has found sufficient a plaintiff's submission of a sample of forty excessive force complaints from the relevant police department bearing similarities to her own case and arguably evidencing a tendency on the part of the Internal Affairs division to insulate officers from liability. Merman, 824 F. Supp. 2d at 593–94.

[9] For example, in 2004, there were 176 open excessive force cases, 76 of which were pending from 2003, and the department closed only eleven. Thus, 167 excessive force cases from 2003 and 2004 were still open in 2005. In total, there were 487 cases held over in the year 2004. (Dep. of John Sosinavage, Doc. No. 144, Ex. 48 42:25–47:18.)

over the longer term, ensure that the backlog does not reoccur on a regular basis, could lead one to conclude that the City of Camden and the police department are deliberately indifferent to the conduct of its police officers and the civil rights of its citizens."[10] (2002 Report at 45, Doc. 144, Ex. 38.) Although, standing alone, this is the type of statistical evidence that cannot support a finding of municipal liability under § 1983, see Merman, 824 F. Supp. 2d at 591, when coupled with Plaintiff's additional evidence, the Court finds it instructive.

Plaintiff also introduces internal affairs records showing that Stetser and Parry were the subjects of internal affairs complaints prior to Plaintiff's arrest. Internal Affairs files reveal that Stetser had six internal affairs complaints lodged against him between 2004 and July 2008—not including Plaintiff's—including one for excessive force, one for improper arrest, and one for harassment/improper detainment. (Pl.'s Br., Doc. 144, Ex. 58a at 4 (showing Stetser's internal affairs "index card."); id., Ex. 57.) Parry was the subject of two internal affairs complaints during this time period, although notably, one does not appear on the "index card" in Parry's IA files.[11]

The Court recognizes that in many cases in which courts have denied summary judgment, plaintiffs have offered stronger evidence of consistently filed complaints than is offered here. See Beck, 89 F.3d at 983 (denying summary judgment where plaintiff introduced that the officer had five prior complaints filed against him in five years, all of which alleged similar misconduct); Garcia, 2011 WL 689616 at *3–5 (D.N.J. Feb. 16, 2011) (denying defendant municipality's motion for summary judgment on plaintiff's § 1983 claim when plaintiff

---

[10] The Court recognizes that this Report was written six years prior to Plaintiff's arrest. However, given CPD's uninterrupted backlog of civilian complaints, the Court finds it relevant.

[11] Stetser and Parry also had three complaints filed against them after Plaintiff's July 1 arrest. However, because they were filed after Plaintiff's original excessive force complaint, the Court finds them irrelevant in determining whether the department should have known that Stetser and Parry were at risk of violating Plaintiff's civil rights. (See Pl.'s Br., Doc. 144, Exs. 55, 56, 59.)

presented evidence that the six individual defendants together accounted for more than 55 complaints for excessive force and false arrest in the 11 years prior to the incidents at issue); Merman, 824 F. Supp. at 593 (allowing the case proceed when plaintiff introduced, among other things, evidence that the Camden Police Department received ten civilian complaints alleging police brutality stemming from events surrounding Plaintiff's arrest). However, the Court does not find the number of complaints filed against the officers to be dispositive. Here, the allegations contained in the complaints and the thoroughness of the related investigations further influence the Court's decision.

For example, the first recorded excessive force complaint alleged against Stetser was "not sustained," which simply means than an allegation could not be proved or disproved at that time. (Sosinavage Dep., Doc. 144, Ex. 48, 30:7–10.) Thus, a factfinder could reasonably conclude that the "not sustained" complaints might actually represent evidence of prior constitutional violations. The "unfounded" complaint was filed on August 29, 2007, more than a year before Plaintiff's arrest, and contains allegations nearly identical to those Plaintiff now alleges and to which Stetser and Parry later admitted.[12] (Pl.'s Br. Ex. 58.) A disposition of "unfounded" means that the investigator determined that the reported incident "did not occur" and that the complainant was "lying more or less." (Sosinavage Dep. 30:11–15.) Yet, the investigation of Mr. Whitley's complaint appears to have been less than thorough. An Internal Affairs investigative memorandum indicates that the department interviewed no witnesses or even the

---

[12] As far as the Court can tell, the "complaint" came in the form of a motion filed by Harold Whitley's attorney seeking the personnel records of Parry and Stetser. The complaint states that Stetser and Parry planted evidence on Whitley, whom they had arrested on drug charges. Whitley's counsel also relayed that two other individuals had alleged the same misconduct against Officer Stetser. (See Doc. 144, Ex. 58.)

11

officers.  In fact, it appears the investigator made his determination after examining only the major incident reports accompanying the arrests. [13]  (Id.)

There is also evidence in the record that the department's internal operations were in disarray in the years leading up to Plaintiff's arrest.  The Attorney General of New Jersey had directed the Camden County Prosecutor's Office to take over the management of the Camden Police Department.  In August 2006, Arturo Venegas began his duties as Supercession Executive, and his consulting agreement implied that the Police Department lacked "clear standards of performance for the police department and its employees" and a "system of progressive discipline that holds both employees and their managers accountable for performance and behavior."  (Consulting Agreement at 3 ¶ g, Doc. 144, Ex. 36.)  While this evidence does not compel a finding of Monell liability, it aids Plaintiff in establishing genuine issue of material fact suitable for a jury.

Defendant argues that Plaintiff cannot establish a nexus because the Camden County Prosecutor's Officer ("CCPO") suspended the CPD's investigation of Stetser and Parry pending the CCPO's criminal investigation into the officers.  (Def.'s Br. 21)  However, based on the exhibits cited by Defendants, the CCPO did not take over the CPD's investigation until September 16, 2008, more than two months after Plaintiff's arrest. (Def.'s Br. Ex. 29.)[14]  The evidence on which Plaintiff relies questions the adequacy of the Internal Affairs investigations in the years leading up to Plaintiff's arrest.  "Were a jury to credit [P]laintiff's proofs that the City inadequately investigated its officers' alleged use of excessive force and other constitutional

---

[13] The memorandum indicates that the IA investigator looked only at the major incident reports authored by the respective officers, after which the investigator found "no evidence that would substantiate any violations of Rules and Regulations or inappropriate behavior on the part of any officer involved."  (Id.)
[14] The deposition of Mark Chase, an Assistant Prosecutor at the CCPO, reveals that the CCPO first learned of allegations against Stetser, Parry, and others in January 2008, but that the investigation was in the City of Camden's hands until September 2008. (Def.'s Br., Ex. 28, 54:1–8; 59:19–69:4.)

12

violations and failed to properly supervise and discipline its officers, a reasonable fact-finder could, in turn, conclude that the City's action, or lack thereof, constituted deliberate indifference and proximately cause plaintiff's injuries." Merman, 824 F. Supp. 2d at 594. The causal link is not too tenuous, and therefore, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury. Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990). As such, the Court denies Defendant's Motion for Summary Judgment with respect to Plaintiff's Monell claim premised on his failure to investigate theory.

The Court's decision does not imply that the City's handling of civilian complaints was wholly improper or unfair. The Court simply finds that the Plaintiff has provided enough evidence to present his case to a jury. A jury is free to disagree with Plaintiff's theory and find that the City's internal affairs investigations were adequate and did not proximately cause Plaintiff's constitutional injury. The Court does not consider the merit of Plaintiff's claim or Plaintiff's ability to satisfy each element of liability.[15] The Court simply concludes that it cannot rule against Plaintiff's Monell claim against the City as a matter of law at this time.

ii. **Failure to Supervise**

Plaintiff also alleges that the CPD's supervisory structure and generally inadequate supervision of its officers' day-to-day activities caused Plaintiff's constitutional injuries. (Pl.'s Br. ¶¶ 30, 32, 33.) The Court notes that Plaintiff cites no case law in support of its position and introduces no expert testimony to opine on the CPD's supervisory structure or monitoring equipment. Nonetheless, after considering the evidence on which Plaintiff relies, the Court finds

---

[15] The Court also recognizes that Plaintiff does not have an expert to opine on the adequacy of CPD's Internal Affairs investigations. Although this fact may affect Plaintiff's ability to convince a jury, it is not a death knell at this stage. See Beck, 89 F.3d at 975–76 ("As for drawing inferences from the evidence regarding the adequacy of the investigatory process, we again agree with Beck that 'to require expert testimony to prove this fact is ridiculous. It is not beyond the ken of an average juror to assess what a reasonable municipal policymaker would have done with the information in this case.'").

the Plaintiff has not identified a genuine issue of material fact for trial on this theory. Plaintiff has not shown how the CPD's supervisory structure or its failure to equip its vehicles with monitoring capabilities would have prevented Stetser and Parry from engaging in criminal activity. Moreover, there is also "not a single precedent which holds that a governmental unit has a constitutional duty to supply particular forms of equipment to police officers." Plakas v. Drinksi, 19 F.3d 1143, 1150 (7th Cir. 1994). In fact, Defendant's expert certified that the electronic monitoring of its officers' activities, instituted sometime after Plaintiff's arrest, "far exceeds the practices of law enforcement nationwide." (Def.'s Br. 5.) The causal link is simply too tenuous to withstand a motion for summary judgment.

### iii.  Failure to Train

Plaintiff asserts that "[t]he failure to train . . . Stetser and Parry was a deliberate indifference to the rights of persons" with whom the officers came into contact. (Pl.'s Br. 34.) Specifically, he first argues that the failure to train was "obvious" given the way tests were administered and graded. (Id. ¶ 35.) Plaintiff also argues it was necessary for the CPD to periodically publish to officers its "use of force policy and the code of conduct" and provide effective training to officers and supervisors "about how to recognize and eradicate excessive force and misconduct." (Id. at 35.)

In resolving the issue of a city's liability for failure to train, as Plaintiff alleges here, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." City of Canton, 489 U.S. at 390 (1989). The identified deficiency in a city's training program must also be closely related to the plaintiff's constitutional injury because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to

prevent the unfortunate incident." Id. at 392 (citation omitted).  Thus, Plaintiff's claim yields liability against the City of Camden only where Plaintiff can show that the City's failure to train constituted deliberate indifference to the constitutional rights of its inhabitants.

Plaintiff has not adequately demonstrated that the training Parry and Stetser received was so deficient as to reflect the City of Camden's deliberate indifference to Plaintiff's constitutional rights.  Plaintiff admits that Parry and Stetser received training on, inter alia, morals and ethics, the use of force, and arrests.  (Def.'s SMF ¶ 3, 13.)  Plaintiff also concedes that both Parry and Stetser knew that their clandestine conduct, namely planting drugs on individuals, falsifying police reports, fabricating arrests, etc., were criminal acts not in accordance with the department's policies.  (Id. ¶¶ 17–22, 27.)

Instead, Plaintiff simply asserts that the testing procedures and training were so obviously inadequate as to constitute deliberate indifference.  However, Plaintiff has not sufficiently shown how the City's testing procedures caused Stetser and Parry to engage in blatantly criminal conduct.  The same can be said about Plaintiff's contention that the CPD should have more frequently published its excessive force policies.  The Court finds nothing in the record to connect Stetser's and Parry's flagrantly criminal conduct to the City's failure to more frequently publish its excessive force policies.  Indeed, as Plaintiff concedes, it appears to the Court that Stetser and Parry engaged in criminal conduct in spite of their training and not because of it. (See Def.'s SMF ¶ 50.)  Accordingly, Defendants motion is granted with respect to Plaintiff's Monell claim premised on the City's failure to train Stetser and Parry.

### C. Negligence

Count VI of Plaintiff's Complaint alleges that the City of Camden was negligent "in failing to adequately supervise or monitor the actions of police officers who were involved in the

incident, including without limitation, Parry and Stetser." (Compl. ¶ 33.) Defendants contend that Count VI is simply another iteration of Plaintiff's Monell claim and therefore compels summary judgment because "respondeat superior or vicarious liability will not attach against a municipal defendant." See Def.'s Br. at 15. However, although not mentioning the tort by name, Plaintiff appears to state a cause of action under New Jersey law for the tort of negligent hiring, supervision, and retention. See Hottenstein v. City of Sea Isle City, 977 F. Supp. 2d 353, 369 (D.N.J. 2013) (identifying the elements of this tort action). New Jersey law allows plaintiffs to assert claims against municipalities for negligent supervision of their employees. Clemons v. City of Trenton, No. 10-cv-4577, 2011 WL 194606, at *1 (D.N.J. Jan. 20, 2011) (citing Hoag v. Brown, 935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007)). Moreover, "a claim based on negligent hiring or negligent supervision is separate from a claim based on respondeat superior." Hoag, 935 A.2d at 1230. The Court finds that Plaintiff has provided enough evidence to withstand Defendant's Motion for Summary Judgment on Plaintiff's theory that the internal affairs department provided inadequate supervision of its officers.

### D. Conspiracy

In Count VIII, Plaintiff alleges a conspiracy claim against the City of Camden. Plaintiff's conspiracy claim asserts that Parry and Stetser conspired amongst themselves to deprive Plaintiff and others of their constitutional rights.[16] (Fourth Amended Compl. ¶¶ 45–52.) Although Defendant did not move for summary judgment in its initial brief, district courts have the power to grant summary judgment sua sponte when appropriate. See Powell v. Beard, 288 Fed. App'x. 7, 8–9 (3d Cir. 2008).

---

[16] Although Plaintiff does not specifically identify the cause of action, the court interprets Plaintiff's complaint to assert a cause of action under 42 U.S.C. § 1985(3).

As explained *infra*, it is well settled that a municipality is liable under § 1983 only where a municipal policy or custom caused the constitutional violation at issue. Monell, 436 U.S. at 691. Thus, the City of Camden is not liable for a conspiracy between Parry and Stetser unless an official policy or custom underlies the conspiracy. See Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1330 (11th Cir. 2015) ("While this Court has never had occasion to hold that a conspiracy claim against a municipality must include the existence of a policy or custom underlying the conspiracy, that has to be so.") Holding otherwise would subject the City of Camden to § 1983 liability on a theory of respondeat superior, which the courts have long held is prohibited. Here, the claim hinges liability on the theory that the City "should have been aware of [the officers'] conspiracy." (Compl. ¶ 51.) Because a municipal entity cannot be found liable solely on a theory of respondeat superior, the Court grants Defendants motion for summary judgment with respect to Count VII of the Complaint.

### III. CONCLUSION

The Court concludes that summary judgment is unwarranted on Plaintiff's § 1983 claim and negligent supervision claim because material disputes of fact still exist. An appropriate order shall enter today.

Dated: 10/20/2015                                     s/Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge